John A. Bailey, Jr. (ISB No. 2619)
Frederick J. Hahn, III (ISB No. 4258)
RACINE, OLSON, NYE,
BUDGE & BAILEY, CHARTERED
P.O. Box 50698
Idaho Falls, Idaho  83405
Telephone:  (208) 528-6101
Fax:  (208) 528-6109
*jab@racinelaw.net*
*fjh@racinelaw.net*

*Attorneys for Use-Plaintiffs RAFTER H CONSTRUCTION, LLC and NEAL HIKIDA*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *ex rel.* RAFTER H CONSTRUCTION, LLC, an Idaho limited liability company, and NEAL HIKIDA,<br><br>    Plaintiffs,<br><br>vs.<br><br>BIG-D CONSTRUCTION CORP., a Utah corporation, and BIG-D CORPORATION, a Utah corporation, and DOE DEFENDANTS 1-20,<br><br>    Defendants. | Case No. 4:16-cv-00401-BLW _____<br><br>**FALSE CLAIMS ACT COMPLAINT AND JURY DEMAND**<br><br>FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2) |

Relators RAFTER H CONSTRUCTION, LLC and NEAL HIKIDA, by and through their counsel of record Racine Olson Nye Budge & Bailey, Chartered, as and for a cause of action on behalf of and in the name of the United States of America against the above-named Defendants claim and allege as follows:

**FALSE CLAIMS ACT COMPLAINT AND JURY DEMAND - Page 1**

## I.  INTRODUCTION

1. This is an action to recover damages and civil penalties on behalf of the United States of America arising from false statements and claims made and presented by Defendants and/or their agents, employees and co-conspirators in violation of the Federal Civil False Claims Act, 31 U.S.C. § 3729 *et seq.* as amended (the "Act").  The violations of the Act involved false statements and claims relating to a federal Small Business Administration project and Defendants' history of submitting false claims and statements relating to similar federal procurements.

2. Pursuant to the Act, based upon Defendants' knowing submissions of false and fraudulent claims and statements to the United States Government, Defendants are liable for civil penalties up to $11,000.00 for each such claim submitted or paid, as well as three times the amount of the damages sustained by the United States Government.

3. Based upon the provisions of the Act, Plaintiffs are "relators" seeking to recover damages and civil penalties arising from Defendants' presentation of false records, claims, and statements to the United States Government, as well as its agents in connection with Defendants' claims for payment on the federal procurements as alleged herein.

## II.  PARTIES, JURISDICTION AND VENUE

4. Plaintiff Rafter H Construction, LLC ("Rafter H") is an Idaho limited liability company with its principal place of business in Rexburg, Idaho.  Rafter H is a Small Business Administration ("SBA") qualified HUBZone contractor pursuant to 13 C.F.R. Part 126.  Rafter H is also an SBA qualified 8(a) contractor.

5.  Relator Neal Hikida ("Hikida") is an individual residing in Rexburg, Idaho and a manager/owner of Rafter H.

**FALSE CLAIMS ACT COMPLAINT AND JURY DEMAND - Page 2**

6. Defendant Big-D Construction Corp. ("Big-D") is a Utah Corporation principally located in Salt Lake City, Utah. Big-D is qualified to conduct and presently conducting business within the State of Idaho.

7. Plaintiffs are informed and believe that Defendant Big-D Corporation ("Big-D Corp.") is a Utah Corporation with its principal place of business in Salt Lake City, Utah.

8. Doe Defendants 1-10 are persons or entities yet unknown who were involved in and the facts and circumstances that give rise to Plaintiffs' claims in this matter. The Doe Defendants may be individuals and/or companies who were involved in facilitating the transactions, underlying Plaintiffs' claims in this matter. The Doe Defendants profited by facilitating the transactions and false claims as alleged herein. Upon discovery, Plaintiffs will seek amendment of the pleadings to add the Doe Defendants as named Defendants in this action.

9. Plaintiffs bring this action to recover damages and civil penalties on behalf of the United States of America based upon false claims, transactions, and other related actions by Defendants. This action is brought pursuant to Title 31, U.S. Code §§ 3729-3733, an Act known as the False Claims Act (the "Act"). Plaintiffs' claims through the relators are brought pursuant to 31 U.S.C. § 3730(b) on behalf of the United States of America.

10. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1345 and Plaintiffs' claims arise under and are founded upon Federal law.

11. The Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a), which provides that any action arising under the Act may be brought in any District in which Defendants may be found, reside, transact business or in which any act proscribed by Title 31 § 3729 occurred. The above-named Defendants contacted Plaintiff Rafter H in Idaho and entered into

contracts with Rafter H, which give rise to false claims perpetrated by Defendants. Significant acts which give rise to Plaintiffs' claims under the Act occurred, within the District of Idaho.

12. Venue is proper in the Eastern Division of the U.S. District Court for the District of Idaho pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b). Defendants Big-D and Big-D Corp., as well as the Doe Defendants are found within the State of Idaho, and/or conducted business within the District of Idaho, including the substantial transactions which give rise to the claims in this matter.

### III. GENERAL ALLEGATIONS

A. **ALLEGATIONS REGARDING RAFTER H QUALIFICATIONS AS AN 8(a) CONTRACTOR**

13. Pursuant to 15 U.S.C. § 637, the SBA established and administers a program known as the 8(a) Business Development Program, which is designed to assist small socially and economically disadvantaged persons and businesses. The 8(a) Program was established to allow disadvantaged businesses to grow and develop through set aside federal procurements, procurements competed only with other 8(a) firms, and through the use of approved Mentor Protégée Agreements with other established businesses including large businesses operating in the same industry. 8(a) certified companies are allowed a period of 9 years to grow and develop within their industry.

14. On August 5, 2010, Rafter H was certified as an 8(a) contractor by the SBA. None of the Defendants are 8(a) certified, and none are entitled to bid on or substantially perform federal construction projects that are 8(a) set aside projects.

15. When federal contracts are let to certified 8(a) companies, there are federally mandated subcontract requirements and prohibitions pursuant to the Federal Acquisition Regulations ("FAR"), including FAR 19.811-3, and FAR 52.219-14.

16. In addition to Defendants' violations of the Act on the Wind River Job Corp Project as alleged below, Plaintiffs are informed and believe that Defendants have conspired to violate and have violated the Act with respect to a number of other federal 8(a) procurements.

  B. **ALLEGATIONS REGARDING RAFTER H QUALIFICATIONS AS A HUBZone CONTRACTOR**

17. Pursuant to 15 U.S.C. § 657a the SBA established a procurement system for Historically Under-utilized Business Zones or "HUBZone" program in order to increase employment opportunities, investment and economic development in historically under-utilized business areas. The goals of the SBA's HUBZone program are to channel government contract funds and employment and investment opportunities to the HUBZone impacted areas. Pursuant to the HUBZone program, and SBA regulations, 35% of a HUBZone contractor's employees must reside within the HUBZone area so that contract proceeds are channeled back to the HUBZone.

18. On February 26, 2013, Rafter H became certified by the SBA as a HUBZone contractor. None of the Defendants are HUBZone certified.

19. When federal contracts are let to certified HUBZone companies, there are federally mandated subcontract requirements and prohibitions pursuant to FAR 19.1309 and FAR 52.219-3 and 52.219-4.

20. In addition to Defendants' violations of the Act on the Wind River Job Corp. Project as alleged herein, Plaintiffs are informed and believe that Defendants have conspired to violate and have violated the Act with respect to a number of other federal HUBZone procurements.

### C. ALLEGATIONS REGARDING DEFENDANTS' CONDUCT

21. In 2013, Defendants approached Rafter H and Hikida with respect to a potential federal construction procurement opportunity. Defendants stated that they had been following an upcoming federal construction procurement for some time and recently learned that the government determined the project would be bid and awarded to a HUBZone qualified small business as a small business set aside project, which would be competed only to certified HUBZone contractors.

22. The project that Defendants were interested in performing was known as the Wind River Job Corp. Center in Riverton, Wyoming (the "Project"), which involved the construction of seven buildings for the U.S. Department of Labor with an approximate square footage of 162,000 square feet. The Project solicitation identified that the Project was a 100% HUBZone set aside procurement for small business. The small business size standard was $33.5 million in annual receipts.

23. Defendants arranged a meeting between Rafter H and Hikida with Big-D to discuss the Project, which Big-D had targeted. At the meeting with Defendants, Rafter H and Hikida suggested that the parties pursue a "mentor protégée" relationship, which is contemplated by the SBA program, however, Defendants rejected the idea. Big-D stated that it would prepare the bid proposal for the Project and would arrange to work with Rafter H to manage the Project if the Project contract was awarded to Rafter H.

24.     Plaintiffs are informed and believe that Defendant Big-D's receipts for construction are between $500,000,000.00 and $1,000,000,000.00 annually.  Neither Big-D nor Big-D Corp. are HUBZone qualified contractors.  Big-D and Big-D Corp. were ineligible to propose on the Project.

25.     Big-D prepared a "teaming" agreement to memorialize Big-D's plans to pursue the Project.  Attached hereto as Exhibit "A" is a true, correct and accurate copy of the "Teaming" agreement prepared by Big-D.  Big-D represented to Rafter H and Hikida that Big-D had previously pursued both SBA 8(a) and HUBZone set aside projects through other 8(a) and HUBZone qualified contractors, and utilized a similar "Teaming" agreement to obtain and perform small business construction work.  Big-D lead Rafter H and Hikida to believe that the use of such a Teaming Agreement was an acceptable method of contracting and that Rafter H would perform the necessary required work under SBA regulations.

26.     Big-D prepared a quantitative take-off and bid proposal for Rafter H with respect to the Project, but would not allow Rafter H to participate in the bid proposal process.  Defendants arranged for the bid bond to be submitted by Rafter H with the bid.

27.     Prior to the unsolicited contact by Defendants, Rafter H had obtained its bonding through Allegheny Surety and had no bonding relationship with Defendants' surety Fidelity and Deposit Company of Maryland.  At the time Defendants contacted Rafter H, the single largest bond issued by Allegheny on a Rafter H project had been $541,436.00.     28.     Ultimately, Rafter H was the successful bidder with respect to the Project, and was awarded the Project on or about June 13, 2013.  The base contract amount for the Project was $41,303,762.00.  Prior to the Contract on the Project, the single largest project performed by Rafter H was $541,436.00, or approximately one percent of the Project contract.

**FALSE CLAIMS ACT COMPLAINT AND JURY DEMAND - Page 7**

29. The Project Contract issued by the government included FAR Part 52.219-3, which set forth the HUBZone set aside requirements for performance of the Contract work. In order to comply with the SBA HUBZone requirements of the Contract, Big-D proposed to Rafter H that Big-D would "lease" its management employees to Rafter H through its related corporation Defendant Big-D Corporation. Once again, Defendants asserted that such teaming agreement had been used by Defendants on other HUBZone and 8(a) set aside projects. Defendants rejected Rafter H's suggestion that the parties enter into a Mentor Protégée Agreement as contemplated by the SBA.

30. Defendants arranged to provide Rafter H with the necessary bonds for the Project, and upon award of the Project to Rafter H. Defendants arranged for the issuance of payment and performance bonds pursuant to 40 U.S.C. § 3131 in the penal sum of $41,303,762.00, notwithstanding the fact that Rafter H had never previously obtained a bond even approaching one million dollars prior to the Project award.

31. Subsequent to award of the Contract, Big-D prepared all subcontract agreements to be issued through Rafter H. Big-D even prepared its own subcontract between Rafter H and Big-D in the amount of $26,456,986.00. Attached hereto as Exhibit "B" is a true, correct and accurate copy of the subcontract agreement prepared by Big-D with respect to the Project. At the time the subcontract was issued, it represented 64% of the total contract value.

32. One of the prime subcontractors on the Project was another HUBZone qualified contractor known as Purgatoire Valley Construction, Inc. ("PVC"). Pursuant to the Project Solicitation and SBA Regulations, it was a requirement that 50% of the Project Contract dollar amount be completed by HUBZone contractors, with 35% of such HUBZone contract revenue to be

channeled back to the HUBZone. Therefore, subcontracting with PVC or other HUBZone contractors such as PVC was a critical element of Project contract compliance.

33. On or about August 5, 2013, Big-D signed a subcontract in its own name issued to PVC, as if Big-D were the prime contractor on the Project. Later Big-D reissued the PVC subcontract in the name of Rafter H.

34. Defendants drafted all of the subcontracts on the Project and Defendants managed all subcontractors on the Project. Defendants directed Rafter H with respect to payment for materials and subcontractors, including payments to Big-D and Big-D Corp. under the parties' contracts.

35. With respect to Project correspondence and email, Big-D merely changed its corporate letterhead to that of Rafter H's logo but maintained Big-D's mailing address telephone numbers and e-mail address in an effort to suggest that Big-D management employees were actually Rafter H employees on the Project.

36. Defendants Big-D and Big-D Corp. directed all of the day-to-day management of the Project, and directed Rafter H as to the payment of all invoices on the Project. Defendants relegated Rafter H to a "payment clerk" position on the Project and would not allow Rafter H to participate in the Project management.

37. During the course of the Project performance, Defendants Big-D and Big-D Corp. terminated the PVC subcontract and Big-D took over the bulk of PVC's work, so that Defendants could obtain payment for a portion of the work under PVC's scope of work.

38. As of the date of this Complaint, Defendant Big-D contends that its revised subcontract value is $26,628,730.78 and that it is owed $1,856,707.78 on its subcontract. Additionally,

Defendant Big-D alleges that it is entitled to assert a claim on the Project against the U.S. Dept. of Labor in the amount of $2,890,449.00.

39. As of the date of this Complaint, Defendant Big-D Corp. contends that it has performed at least $2,530,301.77 under the Leasing Agreement and that it is owed $313,065.77 under the Leasing Agreement. Big-D and Big-D Corp. have identical ownership and Big-D Corp.'s employees are actually employed by Big-D.

40. Based upon Rafter H's refusal to agree to pay Defendants' additional demands, and Rafter H's refusal to pursue a claim against the government, Defendants abandoned the Project and walked off the Project without completing the Project work, at or near the time of the Project substantial completion meetings.

41. Rafter H has remained on the Project and continues to attempt to complete the Project work, however, Defendants have refused to repair or complete the deficient work such as the mechanical systems on the Project. Defendant Big-D has directed its subtier contractors to refuse to work with Rafter H to complete the Project.

42. In the intervening months from the time Defendants walked off the Project and the filing of this action, Plaintiff Hikida discussed the issues in this Complaint with the top management of Big-D and Big-D Corp. Relator Hikida mentioned his concerns that Defendants had used Rafter H as a front to illegally obtain the Project contract in Rafter H's name and illegally obtain HUBZone contract proceeds.

43. In response to Plaintiff Hikida's concerns, Defendants filed a separate action in the U.S. District Court for the District of Wyoming against Rafter H. as U.S. District Court of the District of Wyoming, Case No. 16-CV-115J (the "Miller Act Case"). Plaintiffs believe and therefore

allege that the Miller Act Case against Rafter H was undertaken in retaliation for Plaintiffs' claims that Defendants had knowingly and intentionally violated the Act.

44. Defendants utilized a false and fraudulent scheme to obtain and thereafter perform the Project, so that they could obtain the Project funds, including funds set aside and ear-marked Rafter H's and PVC's HUBZones. Attached hereto as Exhibit "C" is a true and correct copy of a page from Defendants' original bid book, which lists work to be performed on the Project and the contractor or subcontractor performing such work. Exhibit "C" was Defendants' plan to perform the Project work.

45. When Plaintiffs approached Defendants regarding the need to comply with SBA regulations, and particularly HUBZone set aside amounts, Defendants stated that Defendants would manage the HUBZone contract requirements. At the time of the discussions regarding contract compliance, Plaintiffs Rafter H and Hikida were already obligated to perform under the Project contract, and were bound by the bonds and a general indemnity agreement signed by Relator Hikida in favor of the bonding company. The government inquired of Rafter H regarding compliance with the SBA set aside requirements. In response to Rafter H's and the government's inquiries, Defendants submitted a false statement to the government concerning compliance with the HUBZone requirements and work that Rafter H would perform. Attached hereto as Exhibit "D" is a true and correct copy of Defendant Big-D's false and fraudulent statements regarding work to be performed by Rafter H.

46. On a monthly basis, Defendants prepared and directed the submissions of pay applications to the government, each of which included false and fraudulent claims. The monthly pay estimates each include numerous false claims pursuant to 31 U.S.C. § 3729(a)(i)-(3) based upon

Defendants' performance of the work falsely designated as work to be performed by Rafter H and PVC. Defendants directed HUBZone funds to themselves and away from the HUBZones.

47. Defendants Big-D and Big-D Corp. have admitted to Plaintiffs that over the course of years, they have utilized the "Teaming Agreement" and "Lease Agreement" to divert hundreds of millions of dollars in 8(a), Small Business and HUBZone work that Defendants would not have been eligible to bid on or perform. Attached as Exhibit "E" is a table of contracts and set aside projects that Relators believe and therefore allege Defendants have illegally and/or fraudulently performed in the name of other HUBZone and/or 8(a) contractors.

48. Notwithstanding the Miller Act Case filed against Rafter H by Big-D and Big-D Corp. to collect additional amounts under the Contract, Defendants have proposed a settlement whereby Rafter H would be required to pursue claims for additional payment against the government and would "split" the proceeds with Rafter H. Attached hereto as Exhibit "F" is a true and correct copy of an email dated March 9, 2016 from Defendant Big-D, setting forth the terms of Defendants' offer.

49. In addition to the Miller Act Case, Big-D is also pursuing a separate arbitration in Rafter H's name in an effort to collect additional contract sums as against PVC, which was terminated by Big-D on the Project.

50. Plaintiffs are informed and believe and therefore allege that at or about the time work under the Project contract commenced, Defendants were specifically advised of the illegal nature of the Teaming Agreement, Subcontract, and Leasing Agreement, however, Defendants consciously and knowingly elected to violate the Act. Plaintiffs are also informed and believe and therefore allege that Defendants have engaged in a pattern of violations of the Act. As alleged in paragraphs 16 and 20 above, Defendants have performed a number of SBA HUBZone and 8(a) contracts

utilizing a scheme similar to the scheme used on the Project, including but not limited to the Projects listed on Exhibit "E".

## IV. CLAIMS

### FIRST CAUSE OF ACTION
### (False Claims Act - Presentation of False Claims - 31 U.S.C. § 3729(a)(1)(A))

51. Plaintiffs incorporate by reference all prior paragraphs set forth above, and further allege as follows:

52. Big-D and Big-D Corp. knowingly (*i.e.* with actual knowledge, deliberate ignorance of the truth or with reckless disregard for the truth) presented or caused to be presented materially false or fraudulent claims for payment or approval to the United States of America on the Contracts for the Project.

53. Big-D was not a SBA approved small business or a HUBZone contractor, nor was it operating under an approved SBA joint venture agreement or an SBA approved mentor-protégée program when it prepared the bids, and subcontracts with respect to the Project. Big-D was ineligible to bid on the Project and fraudulently used Rafter H to obtain the Contract on the Project and perform the Project work. Defendants Big-D and Big-D Corp. prepared and submitted pay applications on the Project which contained false or fraudulent claims for payment.

54. Based upon Big-D's false and fraudulent claims presented under the Contract, the United States has suffered damages, including the amounts obtained by Big-D and Big-D Corp. The damages include all amounts paid to Big-D and Big-D Corp. under the Subcontract or the Lease Agreement between Rafter H and Big-D Corp.

## SECOND CAUSE OF ACTION
### (False Claims Act - Making or Using a False Record or Statement to Cause a Claim to be Paid - 31 U.S.C. § 3729(a)(1)(B))

55. Plaintiffs incorporate by reference all prior paragraphs set forth above, and further allege as follows.

56. As identified hereinabove at paragraphs 33 through 47, Big-D and Big-D Corp. knowingly (*i.e.* with actual knowledge, deliberate ignorance of the truth or with reckless disregard for the truth) presented or caused to be presented materially false or fraudulent records or statements in order to induce the government to award the Contract on the Project and obtain payment or approval from the United States of America on the Contracts for the Project.

57. Big-D and Big-D Corp. were not SBA approved small business contractors, either under the 8(a) Program or HUBZone qualified contractors, nor did they enter into approved joint venture agreements with Rafter H or in an approved mentor protégée program with Rafter H.

58. Big-D and Big-D Corp. caused materially false records and statements to be submitted to the United States for payment. The United States has suffered damages as it was the government's intent to award the Contract to an SBA approved HUBZone small business. The United States' damages include but are not limited to the amounts paid to Big-D and Big-D Corp. under the Contract, the Subcontract, and the Contract between Rafter H and Big-D Corp.

## THIRD CAUSE OF ACTION
### (False Claims Act - Conspiracy - 31 U.S.C. § 3729(a)(1)(C))

59. Plaintiffs incorporate by reference all prior paragraphs set forth above, and further allege as follows:

60. Defendants were advised as to the illegal nature of the Lease Agreement between Big-D Corp. and Rafter H, as well as the Subcontract between Big-D and Rafter H. Notwithstanding their knowledge of the illegal nature of the Contracts, Defendants conspired to violate the Act.

61. Big-D, Big-D Corp., and the Doe Defendants knowingly (*i.e.* with actual knowledge, deliberate ignorance of the truth or with reckless disregard for the truth) civilly conspired to violate 31 U.S.C. § 3729(a)(1)(A-G) and to submit false statements and claims for payment to the United States.

62. The United States has been damaged by Defendants' conspiracy in the amounts obtained by all Defendants under the Contracts issued for the Project.

## FOURTH CAUSE OF ACTION
### (False Claims Act - Possession, Custody or Control of Property to be Used by the Government - 31 U.S.C. § 3729(a)(1)(E))

63. Plaintiffs incorporate by reference all prior paragraphs set forth above, and further allege as follows:

64. Big-D knowingly (*i.e.* with actual knowledge, deliberate ignorance of the truth or with reckless disregard for the truth) presented or caused to be presented materially false or fraudulent claims for payment or approval to the United States of America on the Contracts for the Project.

65. Defendant Big-D removed construction materials including blue board insulation, which was billed to the United States, paid for by the United States, and later removed from the Project by Big-D. The amount of materials included three semi-loads of insulation material, which was submitted to the United States for payment in an amount exceeding $100,000.00.

66. The United States has incurred damages relating to Big-D's wrongful removal of material from the Project in an amount to be determined at the trial in this matter.

### FIFTH CAUSE OF ACTION
### (Civil Penalties - 31 U.S.C. § 3729(a)(1)(G))

67. Plaintiffs incorporate by reference all prior paragraphs set forth above, and further allege as follows.

68. Defendants prepared and submitted pay applications each of which contained multiple false claims for payment in violation of 31 U.S.C. § 3729(a)(1)(G) and each such false claim triggers the civil penalties in the amounts of $11,000.00 per violation.

WHEREFORE, relators on behalf of themselves individually and acting on behalf of and in the name of the United States government, pray for relief as follows:

1. That judgment be entered against Defendants in the amount of three (3) times the damages sustained by the United States based upon Defendants' unlawful actions;

2. That judgment be entered against Defendants for civil penalties in the amount of $11,000.00 for each act in violation of the False Claims Act, as adjusted per regulation including each false statement in each of the pay applications submitted by Defendants to the United States;

3. That the relators be awarded the maximum amount recoverable under 31 U.S.C.

   § 3730(d) for bringing this action, including 25% of the proceeds of the action or settlement of the claim if the United States government intervenes in this matter (or pursues its claims through any alternate remedy available to the United States) or alternatively 30% of the proceeds of the action or settlement of the claim if the government declines to intervene in this action;

4.  That relators be awarded all reasonable expenses incurred in the prosecution of this action, plus reasonable attorney's fees and costs as provided for in 31 U.S.C. § 3730(d);

5.  That the Court award all additional relief as the Court deems just and proper.

### V.

### DEMAND FOR TRIAL BY JURY

  Pursuant to Rule 39 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury as to all matters so triable.

  DATED this 6th day of September, 2016.

             RACINE, OLSON, NYE, BUDGE
              & BAILEY, CHARTERED


             __/s/ John A. Bailey, Jr._____
             John A. Bailey, Jr.
             *Attorney for Plaintiffs*

             RACINE, OLSON, NYE, BUDGE
              & BAILEY, CHARTERED


             __/s/ Frederick J. Hahn, III_____
             Frederick J. Hahn, III
             *Attorney for Plaintiffs*