UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *ex. rel.* RAFTER H CONSTRUCTION, LLC, an Idaho limited liability company, and NEAL HIKIDA,<br><br>Plaintiffs,<br><br>v.<br><br>BIG-D CONSTRUCTION CORP, a Utah corporation, and BIG-D CORPORATION, a Utah corporation and DOE DEFENDANTS 1-20,<br><br>Defendants. | Case No. 4:16-cv-00401-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Pending before the Court is Plaintiffs/Relators, Rafter H Construction, LLC, and Neal Hikida's ("Plaintiffs") Motion for Attorney Fees and Costs. Dkt. 15. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court finds good cause to GRANT the Motion.

## II. BACKGROUND

On September 6, 2016, Plaintiffs filed a qui tam action pursuant to the False Claims Act ("FCA") against Defendants Big-D Construction Corporation and Big-D Corporation ("Defendants"). Plaintiffs filed their Complaint under seal in the United States District Court for the District of Idaho.[1] On March 6, 2018, the United States filed its Notice of Intervention for the Purpose of Settlement and to Unseal the Case. Dkt. 13. Subsequently, on April 24, 2018, Plaintiffs notified the Court that the matter had settled and moved for dismissal of the Complaint. Dkt. 16. The Court granted the same on April 25, 2018. Dkt. 18. Importantly, even though the Court dismissed the case, it retained jurisdiction for the sole purpose of "resolv[ing] any outstanding issues regarding Relators' entitlement to a share of the proceeds of the settlement amount and to attorneys' fees." Dkt. 18, at 2.

The settlement agreement in this case (the "Big-D Settlement Agreement") included another qui tam action filed against the same Big-D defendants in the United State District Court for the District of Utah.[2] The Big-D Settlement Agreement resulted in a payment by the Big-D defendants to the United States in the amount of $1,500,00.00, of which $437,100.00 was designated as settlement of the Idaho Action. The Big-D Settlement Agreement specifically preserved the Relators' right and claim to attorneys'

---

[1] *The United States of America, ex rel. Rafter H Construction, LLC, et al. v. Big-D Construction Corp., et al.* (case number 4:16-cv-00401-BLW). This case was transferred to the undersigned Judge on August 31, 2017.
[2] *United States of America, ex rel. Andersen v. Big-D Construction Corp. et al.* (case number 1:11-CV-00176)

fees from the Big-D defendants. Following the Big-D Settlement Agreement, the United States and the Relators entered into a settlement agreement (the "Relator Settlement Agreement") regarding the disbursement of the Relators' settlement proceeds pursuant to 31 U.S.C. 3730(d)(1). Importantly, the Relator Settlement Agreement also specifically preserved the issue of Relators' entitlement to expenses, costs, and attorneys' fees pursuant to 31 U.S.C. § 3730(d)(1).

### III. LEGAL STANDARD

In an FCA action, a qui tam plaintiff is entitled to "an amount for reasonable expenses which the court finds to have been necessarily incurred, *plus reasonable attorneys' fees and costs*." 31 U.S.C. § 3730(d)(1) (emphasis added). Furthermore, these expenses "shall be awarded against the defendant" and not taken out of the overall proceeds—a portion of which the qui tam plaintiff is also entitled to. *Id.*

After determining that a basis exists for a proper award of attorney fees, the Court must calculate a reasonable fee award. *Hensley v. Eckerhart*, 461 U.S. 424, (1983). Generally, the Court utilizes the "lodestar figure," which multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.* The Court can then adjust the lodestar figure if necessary, based upon the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir.1975), that have not been subsumed in the lodestar calculation. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008).

# IV. ANALYSIS

The Ninth Circuit has succinctly described the structure of an FCA case as follows:

> Under the False Claims Act, any person who defrauds the United States Government is liable for civil penalties. 31 U.S.C. § 3729 (1994). Although the FCA requires the Attorney General to investigate possible violations, *id.* § 3730(a), the FCA also permits civil qui tam actions by private persons, known as relators, *id.* § 3730(b). In a qui tam action, the relator sues on behalf of the government as well as himself. If the relator prevails, he receives a percentage of the recovery, with the remainder being paid to the government.

*U.S. ex rel. Biddle v. Bd. of Trustees of Leland Stanford, Jr. Univ.*, 161 F.3d 533, 535 (9th Cir. 1998). "Two of the primary purposes of the FCA are to alert the government as early as possible to fraud that is being committed against it and to encourage insiders to come forward with such information where they would otherwise have little incentive to do so." *Id.* at 538. After a qui tam action has been filed, the government may elect to "(1) intervene in such an action and take over its prosecution, 31 U.S.C. § 3730(b)(2); (2) 'pursue its claim through any alternate remedy available to the Government,' instead, *id.* § 3730(c)(5); or (3) decide not to take any action, allowing the private individual, . . . to pursue the claim to completion, *id.* § 3730(c)(3)." *United States v. Sprint Commc'ns, Inc.*, 855 F.3d 985, 988 (9th Cir. 2017). If the government proceeds with an action, the qui tam plaintiff is entitled to a share of the proceeds and his fees and costs. 31 U.S.C. § 3730(d)(1).

In this case, the government elected to intervene. Subsequently, the parties agreed to a settlement that encompassed both the Idaho action and the Utah action. This

outcome—as outlined in the FCA—mandates that Plaintiffs receive a share of the proceeds as well as their reasonable costs and attorney fees.

Here, Defendants raise three arguments in opposition to Plaintiffs' request for attorney fees. First, Defendants claim that because this case was not filed first, Plaintiffs are barred from recovering their fees and costs. Second, Defendants claim that Plaintiffs requested fees are excessive or improper. Third, Defendants assert that the Court should apply any award as an offset to monies owing, rather than a direct payment to either Plaintiffs or Plaintiffs' Counsel. The Court will address each argument in turn.

A. First to file

Defendants claim that the instant action is a subsequent action and therefore, Plaintiffs cannot recover their attorney fees. While Defendants cite to a correct legal principle in FCA actions,[3] this argument is misplaced for three reasons.

First, there is no indication that Plaintiffs knew about the Utah action. While the Utah case was filed on December 16, 2011—almost five years before this case (Dkt. 24-3, at 3)—it was not unsealed until October 6, 2017—approximately 11 months *after* this case was filed (*Id*. at 7). Plaintiffs' Counsel testified that they were wholly unaware of the Utah action until it was unsealed and brought to their attention. Dkt. 24-2, at 3. Additionally, the fact that both complaints allege similar behavior—which, according to Defendants, is an indication of a copycat suit—does not indicate that these actions were

---

[3] The FCA outlines that "when a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5).

filed as a coordinated effort. Big-D points to seven lines that are similar between the two suits, but any similarities are more likely due to the fact that Big-D was engaging in similar behavior that resulted in multiple lawsuits. In support of this idea is the fact that the Big-D Settlement Agreement outlines ten separate federal contracts wherein Defendants were in violation of the FCA. In short, the Idaho suit is not a copycat suit and there is no indication that Plaintiffs filed it in an effort to piggyback off of the Utah action.

Second, it is not entirely clear that this provision would even apply under the posture of the two cases. The FCA prevents the *litigation* of subsequent cases. Here both cases were part of a global settlement agreement and raising this defense now seems late at best. There is no "subsequent lawsuit" to prevent.

Finally, claiming *now* that this suit is barred—and subsequently that any request for attorney fees is likewise barred—contradicts contracts already in place. The Big-D Settlement Agreement specifically preserved the Relators' right and claim to attorneys' fees from the Big-D defendants. The Relator Settlement Agreement also specifically outlines that Plaintiffs are entitled to attorney fees and costs.[4] Defendants cannot absolve

---

[4] Presumably Defendants are not a party to the Relator Settlement Agreement—as that would be between Plaintiffs and the United States—but the point remains that all parties seemed to understand from the various agreements that even after settlement, other fees and costs would need to be sorted out.

themselves of their responsibility now. The Court finds Defendants' first to file argument meritless.

B. Type of fees

Second, most attorney fees issues the Court sees are where one party objects to an attorney's hourly rate. Here, Defendants do not contest the hourly rates of Plaintiffs' attorneys, but rather claim that some of the fees requested are not related to this action, but to another lawsuit between the parties.

Although Defendants do not object, the Court will state that it is very familiar with rates charged in Eastern Idaho for legal services and Mr. Hahn's and Mr. Bailey's requested rates—as well as those for their paralegals—are appropriate for attorneys in the area with their level of experience. *See also,* Dkt 15-2 (Declaration of Deanne Casperson attesting to the skills and qualifications of each attorney and that the rate of $300.00 per hour is reasonable and consistent with local market rates for comparable work).

Defendants' main contention in response to Plaintiffs' fee request is that Plaintiffs' have improperly included over $25,000 in fees not related to the instant lawsuit. Defendants claim that it "appears" these entries deal more with another case between these two parties in Wyoming. Defendants' speculation,[5] however, is not sufficient to defeat Plaintiffs' Attorney's affidavit and accounting sheet detailing the work that was done in this case. In response to Defendants' challenge, Plaintiffs' Counsel has reviewed

---

[5] Defendants also opine that "it is difficult to imagine" that the fees listed were not related to the Wyoming case, that they are "undoubtedly" related to the Wyoming case, and that the "timing of events" indicates overlapping or double billing.

their billings and agreed that 2.1 hours could be considered as time spent on both this case and the Wyoming action and agree that the requested amount should be reduced by $773.00.

In short, Plaintiffs have met their burden. The Court has completed a thorough review of all materials submitted and finds that the fees requested are reasonable and appropriate.

Finally, Defendants' have not objected to the other fees and costs requested by Plaintiffs, including filing fees, research fees, and travel costs. The Court has reviewed the requested costs, finds each to be appropriate and reasonable, and will award the same. *See Bjornson v. Dave Smith Motors/Frontier Leasing & Sales,* 578 F. Supp. 2d 1269, 1289 (D. Idaho 2008).

    C.  Offset or direct payment

The most difficult determination in this case is not whether the fees are appropriate or the amount thereof, but to whom the fees should be paid. Pursuant to 31 U.S.C. 3730(d)(1) any fees recoverable are clearly awarded against Defendants; however, what is not as clear is whether these fees are to be paid to Plaintiffs or directly to Plaintiffs' attorneys.

Plaintiffs cite *U.S. ex rel Sharma v. Univ. of S. California*, 217 F.3d 1141 (9th Cir. 2000) for the proposition that fees are to be paid directly to the attorneys in an FCA case. "In the qui tam arena, . . . attorneys' fees must go to the attorneys rather than to the plaintiff. If they did not, a wrong would be perpetrated upon the government. . . . If the amount went to the plaintiff, it would be a compensatory payment which really belongs

to the United States subject to allocation of a portion to the plaintiff." *Id*. at 1143-44. Importantly, however, this language comes from an earlier Ninth Circuit case, *United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip., Inc.*, 89 F.3d 574, 578 (9th Cir. 1996), which has subsequently been abrogated.

In *Astrue v. Ratliff*, 560 U.S. 586 (2010), the United States Supreme Court sought to determine whether an award of attorney's fees under the Equal Access to Justice Act (EAJA) should be paid to the party or directly to the party's attorney. The attorney in *Ratliff* sought direct payment because the government asserted a right to offset the judgment against the litigant's preexisting debt. *Id.* Within the EAJA context, the Supreme Court held that a "fees award is payable to the litigant and is therefore subject to a Government offset to satisfy a pre-existing debt that the litigant owes the United States." *Id.* In other words, the attorney was on his own to collect from his client.

In *United States v. $186,416.00*, 642 F.3d 753 (9th Cir. 2011), the Ninth Circuit—following *Ratliff*—extended this concept to encompass Civil Asset Forfeiture Reform Act (CAFRA) claims. In *$186,416.00*, the Court held that "attorney fees awarded under CAFRA are payable to the claimant, not to claimant's attorney," *Id.* at 754, and that "[d]irect payment to the attorney is the exception, not the rule . . . . Unless the statute specifies payment to the litigant's attorney, payment to the attorney is not assumed." *Id.* at 756.

Later on, in *United States v. Kim*, 806 F.3d 1161 (9th Cir. 2015), the Ninth Circuit was again faced with a decision as to whether to award fees to a party or directly to the party's counsel. In that case, the party relied on two pre-*Ratliff* cases for the conclusion

**MEMORANDUM DECISION AND ORDER - 9**

that fees should go directly to the attorney. One of those cases was *Virani*—the exact language, in fact, that Plaintiffs today use in support of their position (albeit they use the language via *Sharma* rather than *Virani* itself*)*.

> The primary case they rely upon is *U.S. ex rel Virani v. Jerry M. Lewis Truck Parts & Equip., Inc.,* 89 F.3d 574 (9th Cir.1996). In that case (a *qui tam* action where fees were awarded under the False Claims Act), we determined that "the fee is for the attorney and the attorney should receive it," that is, the fees should be paid directly to the attorney. *Id.* at 578. We left no doubt there: a fee award "must be directed to the attorney. Were the rule otherwise, plaintiffs would obtain possession of fee awards, and attorneys would be left to attempt to obtain the money paid for their services as best they could." *Id.* at 579. Honig also cites to *Marre v. United States,* where the Fifth Circuit squarely held that the government could not set off an award of fees to the client's attorney against the client's tax liability, because the fee belongs to the attorney. 117 F.3d 297, 304 (5th Cir.1997).
> However, the reasoning in these cases does not survive *Ratliff*. In *Virani,* we recognized that the language of the False Claims Act provided that attorney's fees awards were to be paid to the clients, but interpreted this language to mean that a client had only the "power" to decide whether to seek fees or not. 89 F.3d at 576–79. In *Ratliff,* the Supreme Court interpreted the text of the EAJA, providing that fees are to be awarded to the prevailing party, to mean that an award of attorney's fees was to be <u>paid directly to the party and not to the attorney</u>. 560 U.S. at 592–93, 130 S. Ct. 2521. *Ratliff* arrived at this holding in the same posture as *Marre:* whether the fee was paid directly to the attorney or not affected the government's right to use the fee award to offset a preexisting liability. *Id.* at 590–91, 130 S. Ct. 2521. The Supreme Court in *Ratliff* recognized that it was overturning circuit precedent that provided for direct payment of fee awards under the EAJA to attorneys. *Id.* Accordingly, *Ratliff* abrogated *Virani,* and we are bound by our holding in *$186,416.00 I* that "attorney fees awarded under CAFRA are payable to the claimant, not to claimant's attorney." 642 F.3d at 754.

*Kim*, 806 F.3d at 1173–74 (underlining added). Thus, *Kim* makes clear that the language from *Virani*—in fact the entire holding—was overturned.

All of this aside, there are still looming questions that none of these cases address. First, *Ratliff*, *$186,416.00*, and *Kim* only explicitly discuss EAJA and CAFRA claims—

although *Kim* does state that *Ratliff* abrogated *Virani* (an FCA case) and that it (the Ninth Circuit) is bound by that decision. Second—and somewhat troubling—*Kim* does not address *Sharma* at all. There is a strong inference that *Sharma* was overturned (or at least the *Virani* language in *Sharma*), however, an inference could also be made that *Sharma* was specifically left out because FCA claims are different from EAJA and CAFRA claims.[6]

Finally, the context of the decisions in these cases is different than the position of this case. In each of the above cited cases, the Court was striving to ensure that attorney fees (1) did not inflate a plaintiff's recovery, or (2) that the fees actually got paid out and were not just used to offset existing debts owed (to the government; not a third party).

Neither of these situations is present here. First, the award of fees in this case is separate from Plaintiffs' share of the proceeds and will not inflate Plaintiffs' recovery. Second, there is no fear that the government will not get its fair share because some of the settlement was apportioned off for attorneys—or conversely that an attorney will not get his fair share because his fee was used as an offset to the government for an existing debt—as neither of these situations is present here today.[7] It is the Court's duty, therefore, to make a reasoned decision based on all available information.

---

[6] This, however, would result in *Sharma* directly contradicting *Kim*—or again—at least the portion of *Sharma* dealing with FCA fee awards being paid directly to attorneys under *Virani*.
[7] The Settlement agreement differentiates between the amount owed to the Government ($1,500,000) and attorney fees and costs, and there are no outstanding federal debts (that the Court is aware of) that might render payment to the Plaintiff's harmful to their attorneys (in that the government would immediately seize it to satisfy an existing—but unrelated—debt).

**MEMORANDUM DECISION AND ORDER - 11**

First, under *$186,416.00*, the Court must look to the statute to determine where the fees are to be paid. Under 31 U.S.C. 3730(d)(1), "any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." "Person"—as used in this chapter—refers to the "person bringing the action." In this case, the person who brought the action—and therefore is entitled to fees—is Plaintiffs, not Plaintiffs' attorneys.

Second, the Court is guided by the principles in *Ratliff*, *$186,416.00*, and *Kim*, that under normal circumstances, attorney fees are to be paid to the party, not the party's attorneys. Additionally, while the Ninth Circuit has not explicitly overruled *Sharma*, the relied upon language in *Sharma* (from *Virani*) has been overturned.

The unique problem here is that Plaintiffs apparently owe Defendants money. These parties were previously parties to a suit in Federal Court in the District of Wyoming. That suit resulted in a judgment against Plaintiffs in favor of Defendants. Apparently, more than $600,000 of that judgment remains unpaid. *See* Dkt 23-3, at 3. Were this fact not present, the Court would have no problem awarding the fees to Plaintiffs.

As it stands, however, the Court is concerned that if it awards fees as an off-set (i.e. Defendants do not tender any money) Plaintiffs' attorneys might not get paid and will "be left to attempt to obtain the money paid for their services as best they c[an]." *Kim*, 806 F.3d at 1173. Plaintiffs' attorneys are entitled to compensation and that compensation—by statute—needs to come from Defendants. If Plaintiffs have been paying their attorneys as this case has been pending, the payment is essentially a

**MEMORANDUM DECISION AND ORDER - 12**

reimbursement of fees tendered. If, however, Plaintiffs have been waiting to pay their attorneys until the conclusion of the case, this award (once received by Plaintiffs) would need to be immediately forwarded to Plaintiffs' attorneys for services rendered. The problem remains, however, that if the Court awards the fees directly to Plaintiff, there is no need to actually exchange funds as these fees will simply offset fees still owing between the parties. *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398 (9th Cir. 1996) (a setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A").

The Court's concerns aside, it appears clear from all relevant caselaw that attorney fees in FCA cases are awarded to the qui tam Plaintiff who brought the FCA action and not directly to counsel. That is what the Court will do in this case.

In short, the Court awards fees and costs against Defendants, in favor of Plaintiffs, for the benefit of Plaintiffs' attorneys. These fees will be "paid" to Plaintiffs—not Plaintiffs' Counsel directly—as an offset.[8]

## V. ORDER

**IT IS ORDERED:**

1. Plaintiffs' Motion for Attorney fees and costs (Dkt. 15) is GRANTED.

---

[8] Unless, of course, there is no debt outstanding. In that case, Defendants will pay Plaintiffs directly.

**2.** The Court hereby awards Plaintiffs attorney fees in the amount of $78,527.00 and costs in the amount of $2,361.44 for a total award of $80,888.44.

**3.** The full amount awarded will be applied as an offset to Plaintiffs debt obligations to Defendants (assuming they still exist), or—if there are no outstanding debts—Defendants will pay the award directly to Plaintiffs.

**4.** Defendants have 30 days to comply with this order.

DATED: October 24, 2018

_____
David C. Nye
U.S. District Court Judge