UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *ex. rel.* RAFTER H CONSTRUCTION, LLC, an Idaho limited liability company, and NEAL HIKIDA,<br><br>Plaintiffs,<br><br>v.<br><br>BIG-D CONSTRUCTION CORP, a Utah corporation, and BIG-D CORPORATION, a Utah corporation and DOE DEFENDANTS 1-20,<br><br>Defendants. | Case No. 4:16-cv-00401-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Pending before the Court is Plaintiffs/Relators, Rafter H Construction, LLC, and Neal Hikida's ("Plaintiffs") Motion for Reconsideration. Dkt. 26. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R.

7.1(d)(2)(ii). For the reasons set forth below, the Court finds good cause to GRANT the Motion.

## II. BACKGROUND

The underlying facts of the case are not overly relevant to the current motion. That said, the Court fully outlined the substantive facts in its prior Decision (Dkt. 25) and incorporates the same herein by reference.

On October 24, 2018, the Court issued its Memorandum Decision and Order granting Plaintiffs' Motion for an Award of Costs and Attorneys' Fees. In that Decision, the Court found that Plaintiffs were entitled to their requested fees and costs under existing settlement agreements as well as the False Claims Act qui tam provisions. *See* 31 U.S.C. § 3730(d)(1). The Court struggled, however, to determine whether to direct the award to Plaintiffs themselves or Plaintiffs' counsel. Ultimately, the Court determined that the proper course of action was to award the fees and costs to Plaintiffs (not Plaintiffs' counsel directly) and furthermore, that the award was to be used as an "off-set" of pre-existing debt obligations between the parties.

Plaintiffs filed the instant motion asking the Court to reconsider its prior decision and instead direct that the award go to Plaintiffs' Counsel directly. Plaintiffs proffer three reasons for their request: "(1) Relators assigned their right to an award of costs and attorneys' fees to counsel; (2) there was no 'debt' or judgment against Relator / Plaintiff Neal Hikida, and therefore any set off is improper and without any basis; and (3) allowing Defendants a right of set off rewards them for the very fraud perpetrated against

the government and thwarts the aims, goals, and intent of the False Claims Act, 31 U.S.C. § 3729." Dkt. 26-1, at 2.

Defendants take issue with each of Plaintiffs' arguments, but most strongly oppose the motion on its face, alleging that the motion is not properly before the Court in the first place. After outlining the applicable legal standard in this case, the Court will begin with a discussion regarding motions to reconsider generally and then address the substance of Plaintiffs' position.

### III. LEGAL STANDARD

Plaintiffs do not initially state a rule upon which they base their request for relief. In their reply brief, however, they mention Federal Rule of Civil Procedure 54(b) which outlines that:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

In light of the posture of this case—specifically that this case itself is settled—the Court is not entirely sure that Rule 54(b) provides an appropriate avenue for reconsideration. This aside, the Court is not without options. As Defendants correctly note, Federal Rule of Civil Procedure 59 does "permit[] a district court to reconsider and amend a previous order." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). The Ninth Circuit has cautioned, however, that this Rule offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Id.* (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000)).

MEMORANDUM DECISION AND ORDER - 3

Critically, "a losing party cannot use a Rule 59(e) motion to relitigate old matters or to raise arguments that could have been raised before the entry of judgment." *Coffelt v. Yordy*, No. 1:16-CV-00190-CWD, 2016 WL 9724059, at *1 (D. Idaho Nov. 30, 2016); *see also Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

Under Rule 59, "there are four limited grounds upon which" a district court may grant a motion for reconsideration: "(1) the motion is necessary to correct manifest errors of fact or law; (2) the moving party presents newly discovered evidence; (3) reconsideration is necessary to prevent manifest injustice; or (4) there is an intervening change in the law." *Coffelt*, 2016 WL 9724059 at *1 (citing *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003)).

## IV. ANALYSIS

A district court has inherent authority and wide latitude in controlling—among other things—its calendar and docket, as well as its orders and decisions. Ultimately, it is the Court's duty "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. In certain circumstances, this may mean that a Court must reconsider, modify, or even reverse a prior determination.

The Court does not take reconsideration lightly. Time, expense, and precedent are all concerns the Court must weigh when a party seeks reconsideration of a prior order or decision. To succeed on a motion to reconsider, a party must first establish that they have the right to ask for reconsideration; that is to say, they must establish that one or more of

the limited grounds for reconsideration are present. If that is the case, the moving party must then convince the Court that their purported reasons rise to the level of reversal.

In this case, Plaintiffs do not claim that there has been an intervening change in the law, nor do they assert that they have newly discovered evidence. They do claim, however, that the Court erred by not recognizing the assignment between Plaintiffs and their Counsel, and by allowing an off-set of the award against Mr. Hikida when there is no debt against him personally. Plaintiffs additionally assert that allowing Big-D to use this award as an off-set does not adequately punish them for their wrongdoings. The Court will address each argument in turn.

As a threshold matter, the Court notes that Plaintiffs do not challenge the underlying legal analysis of the Court's prior decision.[1] This is particularly important as the Court was presented with limited caselaw and analysis on the subject and had to ultimately weigh the facts and try to reach as equitable a resolution as possible. Based upon the facts as the Court understood them, there was no reason or justification to depart from the provisions of the False Claims Act and the limited caselaw it reviewed. To that end, the Court awarded fees and costs simply to Plaintiffs. However, because of prior

---

[1] Plaintiffs do contend that other Acts—other than the False Claims Act—contain similar provisions for fees and costs and that Courts have interpreted those broadly in order to allow for direct payment to attorneys. As the Court previously outlined, however, there are no cases that directly address this question as it relates to FCA claims. In addition, what authority is available relates to different factual circumstances—namely when recovery would inflate Plaintiffs' position or where there are government debts owing.

obligations, the Court ruled that the award would be used as an off-set of that debt, rather than a direct award. The Court did, however, note its discomfort with the outcome:

> [T]he Court is concerned that if it awards fees as an off-set (i.e. Defendants do not tender any money) Plaintiffs' attorneys might not get paid and will "be left to attempt to obtain the money paid for their services as best they c[an]." *Kim*, 806 F.3d at 1173. Plaintiffs' attorneys are entitled to compensation and that compensation—by statute—needs to come from Defendants.

Dkt. 25, at 12. Now, the Court has within its possession additional information that is relevant to its prior determination. The Court, therefore, does not revisit the decision of the award itself, but only to whom it should direct payment of that award.

A. Relators assignment of fees

Plaintiffs argue that "in the absence of a contractual assignment to counsel, [the False Claims Act] requires that attorney fee awards be made directly to the prevailing party, with the ultimate disposition of the award dependent on the contract between the lawyer and the client." *Gilbrook v. City of Westminster*, 177 F.3d 839, 875 (9th Cir. 1999), *as amended on denial of reh'g* (July 15, 1999). Plaintiffs also cite a recent FCA case in this district wherein the Court awarded fees and costs directly to Plaintiff's Counsel because the Plaintiff "ha[d] assigned his right to receive fees to his attorneys." *United States ex rel. Jacobs v. CDS, P.A.*, No. 4:14-CV-00301-BLW, 2018 WL 6268201, at *5 (D. Idaho Nov. 30, 2018).

In this case, Plaintiffs point to the declaration of Plaintiff Neil Hikida filed with its prior Motion as evidence of an assignment. In that document Hikida states that he spoke with his counsel and "discussed particularly the legal authority regarding . . . the payment

of outstanding expenses, costs and attorneys' fees directly to Relators' counsel and the need for Relators to authorize such filing." Hikida further declares that he—on behalf of himself and Rafter H (as he is the manager/owner of Rafter H)—"authorized [Relators'] counsel to move for an award in Relators' name" but that it was "[his] understanding . . . that should the Court grant an award of expenses, costs and attorneys' fees, such an award will be paid by the Defendants Big-D Construction Corp. and Big-D Corporation, and that such payment will go directly to Relators' counsel." Dkt. 24-1, at 2. In support of the current Motion, Hikida filed a second declaration in which he "confirm[s] . . . that Relators in this matter assigned the right to an award of costs and attorneys' fees to Relators' counsel." Dkt. 26-2, at 2.

Defendants take issue with the assignment itself, claiming that it fails to qualify as a true assignment, and further argue that this so-called assignment is not information worthy of a motion to reconsider. The Court disagrees on both points.

First, while Defendants adamantly claim that this agreement between Hikida and his attorneys is not an assignment, Defendants do not cite any authority establishing what *would* qualify as a "contractual assignment." Neither party has outlined what form—if any—this assignment must take. Defendants' disagreement alone, however, is insufficient to render the assignment void. To be sure, the language in Hikida's

declaration is not overly precise, however even looking at the original document[2] it is clear that he truly and legally "authorized" his attorneys to move forward with a request for fees and that it was his understanding that those fees would go directly to his attorneys and not him.

Defendants' contention that Hikida "cannot manufacture [] an assignment by simply stating that his prior affidavit evidences one" (Dkt. 27, at 9) is well taken—again, however, the Court's interpretation of the two documents is more than mere manufacturing—Hikida affirmatively grants (or assigns) Plaintiffs' right to fees and costs to his attorneys. The Court is left to speculate as to what Defendants believe would better qualify as an assignment. In the absence of caselaw outlining a mandatory structure for an assignment, the Court, in its discretion, finds that Hikida's declaration supports an affirmative and binding assignment of fees.

Second, Defendants claim that this information is not appropriately before the Court in a motion to reconsider. Defendants assert that the information is not newly discovered, does not correct any error in law or fact, and is not necessary to prevent manifest injustice. It seems clear that this information does not fit within the "newly discovered evidence" category. The question of whether the Court committed any errors of law or fact, however, is somewhat more nuanced. This is not a situation where the

---

[2] Hikida's second declaration is much clearer. That declaration, however, was filed after the Court's decision and while assuredly a helpful explanation, it would seem somewhat circular to allow that declaration to serve as the basis for a purported pre-existing assignment.

MEMORANDUM DECISION AND ORDER - 8

Court relied on a case that had been overruled (an error in law) or based its decision on a fact not admitted into evidence (error in fact) but rather a hybrid of the second example.

Here, the Court reached its decision without key facts. While it might be easy to blame Plaintiffs for this failure and reject any new facts as a second bite at the apple, it appears Plaintiffs did not bring up the issue of an assignment before *because they did not think they had to*. It is clear from their briefing that Plaintiffs believed certain case law supported an award of attorney fees to their counsel outright. Once the Court alerted Plaintiffs to the fact that their interpretation of the caselaw was incorrect, Plaintiffs immediately notified the Court of the assignment.[3] Importantly, whether the Court views this information as a correction of fact or not, the Court does view this information as necessary to prevent manifest injustice. Defendants recognize that manifest injustice exists when the result is inequitable, *see* Dkt. 27, at 10, but simply believes that there is no inequity here. To the contrary, attorneys not receiving fair and just compensation for work done is a prime example of inequity and injustice.

In short, this information corrects an error in the Court's interpretation of the facts—because it was not aware of this fact to begin with—and prevents manifest

---

[3] Importantly, Plaintiffs' did not conjure up this assignment *after* the Court's decision—as a reaction or "run-around" to the Courts Decision—but pointed out that the assignment had taken place before they filed their Motion and had been overlooked by the Court. Now, it is not the Court's job to comb through the record and make arguments for a party, but again, under the circumstances, it is understandable why Plaintiffs did not bring this issue up before.

MEMORANDUM DECISION AND ORDER - 9

injustice. The Court finds Plaintiffs did assign any right to fees and costs to their attorneys. This is persuasive in the Court's reconsideration.

B. No debt against Neal Hikida

Plaintiffs' second argument in support of its request for reconsideration is that Plaintiff Neal Hikida *does not* have any personal prior obligations or debts to Big-D and an off-set award essentially leaves him no benefit for his involvement in this qui tam action. Under the FCA this is problematic as the statute specifically provides recovery of a qui tam plaintiff's legal fees and costs. *See* 31 U.S.C. § 3730(d)(1). Defendants again find fault in the underlying assertion made by Plaintiffs, but reemphasize that this information is similarly not appropriate in a motion for reconsideration.

The Court is not pointing fingers, but—as before—after a close review of the record and the briefs on the Motion for Attorney Fees, neither party clearly pointed out this key fact to the Court. To be sure, Defendants in their brief state that the judgment in the Wyoming action is against Rafter H, but, that is the extent of the information the Court had. Hikida is the manager/owner of Rafter H, and the Court was wholly unaware of his involvement in the prior suit, whether the judgment was joint and several as to him and his company, or any other details. Said differently, this information is not newly discovered—but again—corrects an error (by raising a previously omitted fact) and prevents an unjust result. Is this something that Plaintiffs *could* have raised before? Arguably yes (after all, Plaintiffs were in possession of this knowledge), however, as the Court has already outlined, Plaintiffs reliance on certain legal principles—principles the Court ultimately overruled—did not necessitate bringing up this fact at that time. The

MEMORANDUM DECISION AND ORDER - 10

information is relevant to the matter at hand and the Court will examine it as part of Plaintiffs' Motion to Reconsider.

The Court turns next to the merits of this information. Under the FCA, if the government proceeds with an action brought by a qui tam plaintiff, that plaintiff is statutorily entitled to a portion of any proceeds resulting from the action, as well as an award of reasonable costs and attorney fees. *See* 31 U.S.C. 3730(d)(1).

Because the Court granted the previous award as an off-set to debts owing between Rafter H and Big-D, Hikida received no benefit[4] for his bringing this action to the United States attention. This outcome circumvents the whole purpose—or at least a key motivating factor—of bringing a qui tam lawsuit. Additionally, each settlement agreement in this case[5] specifically preserved the *Relators'* right to attorney fees. Hikida is one of the Relators in this case and is entitled to that benefit under 31 U.S.C. § 3730. For these reasons, the Court finds this argument likewise persuasive in its reconsideration analysis.

---

[4] Candidly, as Hikida is the owner/manager of Rafter H, he *did* arguably still retain a benefit, however, as a separate and unique plaintiff in this case, his rights and his recovery should not be subsumed by the other Plaintiff—even if he is connected to that other Plaintiff. Defendants seem to recognize this as they indicate they have filed a suit in Idaho state court seeking to establish that Hikida is the alter ego of Rafter H (for liability reasons in the Wyoming Judgment). The Court will not opine on that suit, nor will it undertake a discussion of the legal principles of agent/principle liability, assignee/assignor rights, or corporate structure/piercing the corporate veil. Suffice it to say, in this suit, Hikida and Rafter H are separate and identifiable parties, and each is entitled to the benefits of the FCA.

C. Off-set perpetuates fraud

Finally, Plaintiffs argue that allowing an off-set award to Defendants essentially perpetrates the fraud that is at the root of this action.

Plaintiffs contend that the Wyoming action—that resulted in the judgment at issue which the Court's award was off-set against—involved the very contracts and conduct at issue in this action. They further argue that, but for the seal in this action,[6] they would have been able to apprise the Wyoming Judge and jury of this fraudulent conduct and that, in turn, could have affected the outcome of the Wyoming action.

At a fundamental level, the Court agrees that fraud should not be perpetuated in any form, however, this final argument is not persuasive to the Court for two reasons.

First, this information was available before and is not truly "new." It is not a new legal argument, nor is it a new critical fact—like the assignment of fees or the lack of any debt as to Hikida identified above—but is more of an equitable argument. While an equitable argument might be appropriate in a motion to reconsider under the "prevent manifest injustice" prong, this information is speculative—i.e. it relies on what *might* have happened in a prior case had the information in this case been available at the time of the prior case.

---

[5] As noted in the Court's prior decision, there are two settlement agreements that specifically preserved Relators' rights to attorney's fees and costs: The settlement agreement from the Utah qui tam action and the settlement agreement between the United States and Relators.

[6] Under 31 U.S.C. § 3730(b)(2) qui tam actions are filed under seal until such a time as the United States elects to proceed, or the Court orders the Complaint unsealed.

MEMORANDUM DECISION AND ORDER - 12

Along with being speculative, this information is of marginal relevance to the Court's decision today. The Court is not privy to what has happened in the Wyoming case, nor should what happened there—or did not happen—bear on the outcome of *this separate action* now. Regardless of how this information is characterized, it is of little relevance to the Court.

Whether this action would have materially affected the outcome of the Wyoming action is unknown. While Plaintiffs are free to pursue their theories in the Wyoming case, here, the Court will confine its analysis to what happened solely in this case. While important—from an ethical standpoint and under the FCA—this final argument does not weigh on the Court's decision today.

## V. CONCLUSION

As the Court previously noted, its role is to make "a reasoned decision based on all available information." Dkt. 25, at 11. Based upon the information in its possession at the time of its prior ruling, the Court could not find a way to grant Plaintiffs' request and award fees directly to Counsel, even with persuasive caselaw regarding other statutes and acts that allowed for such a course of action. Plaintiffs have now provided the Court with relevant information that materially affects the Court's prior decision.

This is therefore *not* an example of the proverbial "second bite at the apple." Plaintiffs are not asking the Court to revisit its decision simply because they disagree with the Court's analysis, but because the Court did not have at its disposal certain facts that became extremely important considering the Court's decision. These facts were

raised—and considered—because they correct errors in fact (albeit absentee facts) and prevent manifest injustice.

Here, there was a valid assignment of attorney fees in place that this Court was not aware of. Likewise, the Court did not take into consideration the distinct relationship between Hikida and Rafter H as it relates to the Wyoming judgment. Both factors weigh in favor of an award directly to Plaintiffs counsel. The Court's prior determination as to the applicable caselaw remains intact. Nothing today changes that. What little caselaw exists remains distinguishable from these circumstances as many of those cases deal with acts or provisions *other than* the FCA, and/or involve parties that have a debt with the government (rather than an independent party).

It is still the Court's finding that under normal circumstances an award of attorney's fees under the FCA is directed to the prevailing party and that "the ultimate disposition of the award [is] dependent upon the contract between the lawyer and the client." *Gilbrook*, 177 F. 3d at 874-75. However, the Court also recognizes—in line with the recent *Jacobs* case in this District—that an assignment of fees is enforceable in FCA actions and governs the ultimate outcome of where the Court directs the fee award.

In short, Plaintiffs made a valid assignment of their right to attorney fees and costs to their attorneys in this case. Furthermore, the judgment in the Wyoming action is only binding on Rafter H and applying the award as an off-set of any outstanding debt on that judgment would deprive Hikida of his statutory rights under 31 U.S.C. § 3730.

# VI. ORDER

**IT IS ORDERED:**

1. Plaintiffs' Motion for Reconsideration (Dkt. 26) is GRANTED.

2. The previously awarded amount of $78,527.00 in attorney's fees and $2,361.44 in costs (for a total award of $80,888.44) shall not be awarded as an off-set, but shall instead be awarded directly to Plaintiffs' Counsel pursuant to Relators' valid assignment.

3. Defendants have 30 days to comply with this order.

DATED: January 22, 2019

David C. Nye
Chief U.S. District Court Judge